UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TGL Marine Holdings, ULC,

                Plaintiff,      Case No. 13-cv-14734

v.                                    Judith E. Levy
                                    United States District Judge
Dean Marine & Excavating, Inc.,
and DME Leasing, LLC,

                Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL [162]

The Court held a jury trial in the above-captioned matter from September 20, 2016 through September 27, 2016. On September 27, 2016, the jury reached a verdict in favor of defendants Dean Marine & Excavating, Inc. and DME Leasing, LLC. (Dkt. 155.) Plaintiff TGL Marine Holdings, ULC, has now filed this motion for a new trial. (Dkt. 162.) For the reasons set forth below, plaintiff's motion is denied.

### I.    Background

In 2009, plaintiff entered into a contract with former defendant Nicholson Terminal & Dock Company ("Nicholson") to dock a barge, the

Sarah Spencer, and a tugboat, the Jane Ann IV, at Nicholson's terminal in Ecorse, Michigan. (Dkt. 1 at 2–5.) At some point between 2009 and November 2011, plaintiff hired defendants Dean Marine & Excavating, Inc. ("Dean Marine & Excavating") and DME Leasing, LLC ("DME Leasing") to inspect and maintain the tugboat. Defendants completed work to prepare the Jane Ann IV for winter in November 2011, and this was the last time defendants were on the tugboat. At some point during this same period, plaintiff also hired Joseph Plozai to visit the tugboat, inspect it for signs of damage while docked, and determine whether maintenance or repairs were needed.

Between January 25 and 28, 2013, there was a severe winter storm, and the Jane Ann IV sank at the terminal. (Dkt. 1 at 6.) After inspection, it was determined that several factors caused the tugboat to sink. First, the power cut out during the storm, and without heat, several pipes or valves froze and cracked or burst. Second, the sea chest valve on the tugboat was open and water flowed into the tugboat, which then sank.

On November 15, 2013, plaintiff filed a complaint against Nicholson Terminal & Dock Company ("Nicholson"). (Dkt. 1.) Plaintiff

2

alleged Nicholson had failed to maintain and inspect the tugboat, which caused the boat to take on water and sink during the winter storm. Plaintiff brought six counts against Nicholson: negligence, negligent misrepresentation, breach of contract, and three counts of breach of express or implied warranties. (*See generally id.*)

On January 13, 2014, Nicholson filed a third-party complaint against Dean Marine & Excavating and Mr. Plozai. (Dkt. 10.) Nicholson argued that Dean Marine & Excavating failed to close the valves on the tugboat, which caused or contributed to the tugboat sinking. (*Id.* at 3.) Nicholson also argued Mr. Plozai was negligent in his inspection duties, including failing to supply a backup power source and inspect the systems and valves during winter. (*Id.* at 4.)

On March 31, 2014, Nicholson amended its third-party complaint to add DME Leasing as a defendant, alleging plaintiff hired Dean Marine & Excavating and/or DME Leasing, and that one or both entities was liable for failing to close the valves on the Jane Ann IV. (Dkt. 22 at 3–4.)

On April 16, 2015, plaintiff filed an amended complaint, adding as defendants Dean Marine & Excavating, DME Leasing, Benchmark

Aviation Marine LLC (the Illinois and Michigan entities), and James Nisbet. (Dkt. 62.) Plaintiff alleged defendants Dean Marine & Excavating and DME Leasing breached the contract between the parties and were negligent in performing maintenance and repair work on the Jane Ann IV by, among other things, failing to close the sea chest valve when they were last on the tugboat in November 2011, which caused the tugboat to take on water and sink in January 2013. (*Id.* at 22–23.)

By June 28, 2016, plaintiff had reached a settlement with several of the defendants, and Nicholson, Benchmark Aviation (both entities), and Mr. Plozai were dismissed from the case. (Dkt. 108.) Plaintiff maintained its lawsuit against defendants Dean Marine & Excavating and DME Leasing, but dismissed the negligence count on July 25, 2016. (Dkt. 121.)

On September 20, 2016, the case went to trial on the sole remaining count of breach of contract. A jury found in favor of defendants on September 27, 2016, and judgment was entered for defendants on October 3, 2016. (Dkts. 154, 155.)

On October 28, 2016, plaintiff filed this motion for a new trial.

4

## II. Legal Standard

Federal Rule of Civil Procedure 59 permits a court to grant a new trial, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." "[A] new trial is warranted when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 312 (6th Cir. 2016).

## III. Analysis

Plaintiff first argues the trial was unfair because the great weight of the evidence supported plaintiff's argument that defendants were liable given that defendants knew leaving a sea chest valve open could cause the boat to fill with water and suffer damage. Plaintiff next argues the Court erred in permitting defense counsel to introduce evidence of contributory negligence and in not giving a jury instruction that ordinary negligence is foreseeable. Finally, plaintiff argues defense counsel committed misconduct during closing arguments by

stating the case was really a negligence case and not a breach of contract case, by stating Mr. Plozai was "suspect number one" with respect to liability, and by referring to plaintiff as a "big company."

### *Claim One: Great Weight of the Evidence Supported Plaintiff*

First, plaintiff argues the trial was unfair because the great weight of the evidence supported plaintiff. (Dkt. 162 at 19–20.) Although a court may grant a new trial on this ground, it may not "set aside the verdict simply because it believes that another outcome is more justified." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013). In other words, "[i]f the verdict 'was one which the jury reasonably could have reached,' then a motion for a new trial should be denied." *Id.* (quoting *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2013)).

The evidence in this case was not so one-sided that it was unreasonable for the jury to return a verdict for defendants. Here, defendants admitted into evidence handwritten and typed notes stating they closed the sea chest valve. Plaintiff presented evidence that (1) the parties had a contract requiring defendants to, among other things, close the sea chest valve; (2) the sea chest valve was found open after

the tugboat sank, fourteen months after defendants were last on the tugboat; and (3) defendants' employees were the last individuals on the tugboat who were authorized to work with the valves. Based on these facts, plaintiff argued the jury should conclude that defendants must have left the sea chest valve open, thereby breaching their contract and causing the tugboat to sink.

Considering the totality of the evidence presented at trial, it is clear a jury could reasonably conclude—as the jury in this case did—there was a contract between the parties but that the contract was not breached. Defendants took contemporaneous hand-written notes stating they closed the valves, and a reasonable jury may have found those notes credible. Alternatively, given that there was no written contract between the parties, plaintiff had to establish the existence of the contract by conduct and defendants' notes, and a jury may have reasonably concluded that the terms of the contract did not include closing the sea chest valve.[1]

---

[1] A sea chest is an area on a vessel through which a piping system can draw raw water into the vessel. (*See* Dkt. 147 at 16 (Trial Tr. Sept. 20, 2016).) A sea chest valve is the valve that opens or closes the sea chest and controls whether water may flow into or out of the sea chest to the vessel's other areas. Even if the valve was left in the open position, that alone would not cause a vessel to sink. For example, defendants' owner testified that one of the "potential risks associated with leaving

That defendants knew leaving the sea chest valve open could cause damage (see Dkt. 162 at 7–8) does not, standing alone, demonstrate a contract was breached. Thus, plaintiff cannot rely on defendants' admission to prove that the great weight of the evidence showed defendants either (1) were required by contract to close the sea chest valve or (2) failed to close the sea chest valve. For the Court to hold otherwise in this case would require the Court to independently reweigh the evidence presented at trial and usurp the function of the jury.

Accordingly, plaintiff is not entitled to a new trial based on its claim that the great weight of the evidence favored plaintiff.

### *Claim Two: Admission of Evidence of Contributory Negligence*

Next, plaintiff argues the Court erred in allowing defendants to introduce evidence of contributory negligence through the testimony of Robert Ojala. (Dkt. 162 at 21–22; Dkt. 162-2 at 16–17.) Mr. Ojala testified about, among other things, the duties of a ship keeper and good marine practices. (*Id.*)

---

the sea chest valves on the vessel open included the risk that in the event the pipes in the engine room developed cracks, the Jane Ann IV would take on water . . . in sufficient quantities to sink the vessel." (*Id.* at 20.)

8

Under Michigan law, in a breach of contract case, contributory negligence is not a defense to liability. *JP Morgan Chase Bank, N.A. v. First Amer. Title Ins. Co.*, 795 F. Supp. 2d 624, 633 (E.D. Mich. 2011) (citing *Nelson v. Nw. Sav. & Loan Ass'n*, 146 Mich. App. 505, 509 (1985)). But a plaintiff is entitled to recover damages only "as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of a breach." *Lawrence v. Will Darrah & Assocs., Inc.*, 445 Mich. 1, 7 (1994) (quoting *Frederick v. Hillebrand*, 199 Mich. 333, 341 (1917)).

Plaintiff's argument regarding Mr. Ojala's testimony about good marine practices and the role of a ship keeper is misplaced. Mr. Ojala's testimony, insofar as it related to damages, did not address contributory negligence. Rather, his testimony addressed what is standard practice or common knowledge within the industry and therefore foreseeable for purposes of assessing damages caused by any breach of contract.

Further, as the transcript reflects, Mr. Ojala's testimony on these issues was elicited, in part, to establish the terms of the contract between the parties. As defense counsel said, Mr. Ojala's testimony "would also define the roles of the ship keeper versus Mr. Williams [owner of defendant entities] in this scenario in terms of what would be expected of Mr. Williams contractually speaking." (Dkt. 162-2 at 17 (Trial Tr. Sept. 20, 2016).) Thus, Mr. Ojala's testimony did not improperly introduce evidence of contributory negligence.

Plaintiff also objects to Mr. Ojala's testimony, combined with defense counsel's statement that Mr. Plozai was "suspect number one." (Dkt. 162 at 23.) This objection is unavailing. In a breach of contract case, a plaintiff must demonstrate a defendant's conduct breached the contract. Thus, when a party's failure to perform an obligation is at issue, the behavior of other individuals may be relevant if that behavior supports a defendant's argument that it did not fail to perform its obligation.

In this case, plaintiff contends defendants failed to close the sea chest valve and therefore breached the contract between the parties and that this breach caused plaintiff's injury. Consequently, it was

permissible for defendants to argue (1) they closed the valve, as shown by their notes, and (2) if the valve was open when the boat sank, there were other individuals with access to the tugboat who may have opened it after defendants were last on the tugboat. *See Skibs A/S Gylfe v. Hyman-Michaels Co.*, 438 F.2d 803, 808 (6th Cir. 1971) ("The fact that someone or something else in fact 'caused' the injury may or may not in varying situations affect the liability of the breaching party.").

Although Mr. Ojala's testimony and defense counsel's remark about Mr. Plozai during closing statements would be relevant to a negligence claim, this evidence is also relevant to the breach of contract claim, as set forth above. The fact that this evidence is pertinent to proving a negligence and contract claim does not mean that introducing the evidence solely for the purpose of negating the breach of contract claim was improper.

Insofar as plaintiff's argument can be construed as an objection to Mr. Ojala's statements regarding which party was liable in this case, his statements do not warrant a new trial. Immediately after Mr. Ojala began testifying about liability, plaintiff objected, and the Court sustained the objection, instructing defense counsel and Mr. Ojala the

11

testimony was not permitted. (Dkt. 157 at 31–32 (Trial Tr. Sept. 26, 2016).) Plaintiff was not prejudiced by this "brief testimony" and therefore is not entitled to a new trial on this ground. *See Simmons v. Napier*, 626 F. App'x 129, 138 (6th Cir. 2015) (new trial not merited where trial court sustained objection to improper comments and instructed jury to disregard); *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 516 (6th Cir. 2013) (new trial not merited by inflammatory statements because counsel was "duly chastened for his indiscretion by the district court—abruptly and directly").

Accordingly, plaintiff is not entitled to a new trial on the ground that defendants improperly introduced evidence of contributory negligence.

### *Claim Three: Failure to Give Jury Instruction that Ordinary Negligence Is Foreseeable*

Plaintiff argues the trial was unfair because the Court did not give plaintiff's proposed jury instruction that ordinary negligence is always foreseeable. (Dkt. 162 at 22–23.) Defendants proposed Special Jury Instruction 1, and the Court accepted the following portion:

> The plaintiff may adequately show damages for breach of contract by establishing that such damages arise naturally

> from the breach of contract or were in the contemplation of the parties at the time the contract was made.

(*See* Dkt. 165 at 13.)

After the Court accepted this instruction, plaintiff proposed an additional instruction:

> <u>Ordinary Negligence Is Foreseeable</u>
>
> In deciding whether all, some, or none of the damages naturally arise from the breach of contract, or, in other words, are "foreseeable" damages, you should consider that ordinary negligence by the plaintiff or by other third parties is considered to be foreseeable.

(Dkt. 142 at 6.)

Plaintiff argues this instruction should have been given because defendants improperly introduced evidence of contributory negligence.

First, as set forth above, defendants did not improperly introduce evidence of contributory negligence. Second, the Sixth Circuit has warned against "[t]he inappropriate use of tort-negligence language in . . . contract actions." *Skibs A/S Gylfe*, 438 F.2d at 805 n.1, 808. Thus, giving plaintiff's proposed jury instruction would have been potentially misleading to the jury and contrary to the Sixth Circuit's instructions.

Third, "even erroneous instructions do not require reversal, unless the instructions are 'confusing, misleading, and prejudicial.'" *Troyer v. T. John E. Prods., Inc.*, 526 F. App'x 522, 525 (6th Cir. 2013). As set forth above, giving the proposed instruction would have made the instructions potentially confusing, and the jury instructions as given more "fairly and adequately submitted the issues and applicable law to the jury." *Id.* Instead, the Court's use of part of Special Jury Instruction 1 and the following instruction more accurately reflect the law of damages in breach of contract cases:

> Contract damages are intended to give the party the benefit of the party's bargain by awarding him a sum of money that will, to the extent possible, put it in as good a position as it would have been in had the contract been fully performed. The injured party should receive those damages naturally arising from the breach.

M. CIV. JI 142.31.

As the Court explained on the record to the parties during a jury instruction conference, the instructions given, as set forth above, adequately addressed plaintiff's concerns in light of the facts of this case. This instruction covers foreseeability where it states, "naturally arising from the breach," and evidence of ordinary negligence was never

14

introduced at trial. Accordingly, plaintiff is not entitled to a new trial on this ground.

### *Claim Four: Defense Counsel Misconduct During Closing Statement*

Finally, plaintiff argues it was prejudiced by defense counsel's misconduct during closing statements. During his closing, defense counsel said plaintiff was "trying to make what would have been a negligence case, which [plaintiff] didn't bring, into something it isn't"— a breach of contract case. (Dkt. 157 at 107 (Trial Tr. Sept. 26, 2016).) Plaintiff claims this comment was improper. (Dkt. 162 at 24.) Plaintiff also claims it was prejudiced by defense counsel's reference to Mr. Plozai as "suspect number one" with regards to who should have foreseen the tugboat would sink, and reference to plaintiff as a "big company" to elicit sympathy for defendants' "self-made businesses." (*Id.* at 25–26.)

When a motion for a new trial "is based on alleged attorney misconduct . . . the movant must make a 'concrete showing' that the conduct 'consistently permeated' the trial such that the moving party was unfairly prejudiced by the misconduct." *Smith*, 813 F.3d at 312. Upon such a showing, the court "then considers 'the totality of the

circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case . . . and the verdict itself.'" *Id.* (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (2012)).

In this case, defense counsel's comment that the case should have been brought as a negligence claim was improper. But after defense counsel made this argument, plaintiff objected, and the Court sustained the objection. (Dkt. 157 at 107 (Trial Tr. Sept. 26, 2016).) And in the jury instructions, the Court instructed the jury as follows:

> Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.

(Jury Instr. at 6.) Thus, plaintiff is not entitled to a new trial based this one improper comment. *See Smith*, 813 F.3d at 315 (citing *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 542 (6th Cir. 2014)) (new trial not merited where court gave curative instruction regarding improper opening and closing statements).

Plaintiff did not object during trial to the reference to Mr. Plozai as "suspect number one" or to plaintiff as a "big company." However, a court may consider the statements in a motion for a new trial even if counsel did not object during trial. *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 549 (6th Cir. 2012) (declining to import waiver rule to Rule 59 motions).

These statements do not merit a new trial. The comments about the financial value of plaintiff did not permeate the entire trial and were not relevant to the issues before the jury or the verdict. Further, when read in context, the comments, while likely made to appeal to the jury's sympathies, were not inflammatory. And given the other evidence presented at trial, it was reasonable for a jury to find for defendants regardless of these comments. The comments about Mr. Plozai may have been relevant to determining whether defendants breached the contract, but there was sufficient evidence presented at trial, as set forth above, for a jury to reasonably conclude defendants did not breach their contract. Thus, plaintiff has not satisfied the "heightened showing of prejudice" required to merit a new trial, and its "assertions alone are not enough to establish a reasonable probability of

17

improper influence." *Troyer*, 526 F. App'x at 525. Finally, as set forth above, the Court instructed the jury that closing arguments are not evidence.

Considering these allegedly improper statements together and the totality of the circumstances, plaintiff has not demonstrated there is a "'reasonable probability that the verdict of the jury has been influenced' by the improper conduct." *See Smith*, 813 F.3d at 315. And "[a] jury is presumed to have followed instructions correctly," unless plaintiff makes a concrete showing it has not done so. *Troyer*, 526 F. App'x at 525 (quoting *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 794 (6th Cir. 2002)). Plaintiff has not offered any evidence to make such a concrete showing here. Accordingly, plaintiff is not entitled to a new trial based on defense counsel's closing statement.

## IV. Conclusion

For the reasons set forth above, plaintiff's motion for a new trial is DENIED.

IT IS SO ORDERED.

Dated: January 24, 2017　　　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2017.

<u>s/Felicia M. Moses</u>
FELICIA M. MOSES
Case Manager